I'm very happy today because manna from heaven has come down in the form of the 200 billion dollar lawsuits against some of the largest banks and loan servicers in the United States. This has nothing to do with your case. Would you argue your case? Yes. Well, in my case, none of the borrowers, to my knowledge, have ever survived a motion to dismiss. Motions to dismiss are routinely granted by the Arizona District Courts as well as by district courts in the state of California. And to my knowledge, no borrowers have ever survived. And so that the trustees for the investors in a supposed mortgage-backed security almost always prevail. Why do you think that's so? I think that's so because of what's alleged in the pleadings that have been filed by the Federal Housing Finance Agency, which says that these loans are contaminated with misrepresentation, fraud, fraudulent conduct by the largest banks in our country, and loan servicers. And these loans are, in truth, never securitized. They're not securitized because neither the note is ever transferred from the original lender through the sponsor, through the depositor, through the depositor to the entity that creates the underwriter, and into the trust. They never get into the trust. Let me ask you this. Under Arizona law, is that required for a nonjudicial foreclosure? Absolutely. According to the Hogan case, which is a kind of bipolar case, because in one breath our Arizona Supreme Court said that only a person or entity that has the right to enforce the note can possibly nonjudicially foreclose. Then in the next breath they say, well, the note doesn't matter, because all that's happening here is enforcement of the power of sale. Now the problem is the trustee for the investors never has the power of sale, because the trustee for investors can never show that the deed of trust got from the original lender to the sponsor, to the depositor, to the underwriter, and then into the trust. They never show that information. They can't prove that the deed of trust ever made that transition. Instead, a Hail Mary pass is, in all these cases, you have a Hail Mary pass from the original lender over the depositor, over the sponsor, and over the entity that creates the trust into the hands, supposedly, into the hands of the trustee. You cannot have this Hail Mary pass. That's what's called the Eaton defect, based upon the Eaton case in the state of Massachusetts. Okay. We're not in Massachusetts. But here's my question. Isn't this a variation of the show me the note argument that's been rejected in Arizona? Absolutely not, Your Honor. This is not a show me the note case. This is a show us the authority case. All right. What role does MERS have in this whole scenario? MERS, I've had a bar complaint filed against me for suing MERS, Your Honor. So I know a little bit about MERS. But MERS's role is pervasive. MERS is basically nothing other than LBPS, Lender Business Processing Services. That is the entity. MERS is identified in the controlling paperwork as the SOMA's nominee, unquote. Is that right? That's absolutely true and totally false. Absolutely true and totally false? Yes, at the same time. The paperwork says MERS is SOMA's nominee. I know. But it's that self- But your entire argument seems to boil down on what nominee means. If it means the same thing as agent, you lose. No, Your Honor. I think it's the designation of MERS as the, quote, both. They're wearing two hats, the beneficiary. There can only be one true beneficiary. The beneficiary is the mortgagee or either the be- It has to be either the beneficiary or the lender or the lender's successor. And MERS is never any of those. MERS can never be designated, self-designated as the beneficiary. Now, the problem with that is that there's no- Returning to the question or the comment that was made, MERS is an agent, are they not? Absolutely not. What's the difference whether you call them a nominee? Well, the difference, a major difference, because MERS is calling itself the beneficiary. There can only be one beneficiary. That is the lender or the lender's successors. You cannot be two beneficiaries. MERS never plays the role of a true lender. MERS doesn't accept any payments. MERS is not involved in any loan modifications. MERS has practically no role in the loan. But you're saying it's not possible for MERS to be a nominee as a matter of law? Absolutely. It's not possible. What's your statutory or case reference? Well, the case references are- That establishes your permission that MERS cannot be a nominee. And that's an issue of pure and simple law. My case references are primarily in Reveal. Now, there's a total schism between the decisions in the United States District Courts in the Ninth Circuit from the law in Reveal. The law in Reveal was written by a three-judge panel of the Bankruptcy Court, including a bankruptcy professor at Pepperdine, extremely knowledgeable in bills and notes law. They decided that you have to have the right to enforce the note or you cannot foreclose. And I'm suggesting that the law set forth in the Reveal opinion should be the law in Arizona. That's the problem. It's not the law in Arizona. Okay. In my belief, it is the law in Arizona because of this very questionable decision in Hogan. In the Hogan case, the Arizona Supreme Court specifically cited the restatement, Section 5.4, as an indication that you have to have the right to enforce the note or you can never foreclose. That's the Arizona Supreme Court making that statement. They cannot backpedal in the next five pages of that opinion and say, well, the note doesn't matter. And securitization may not. You don't like Hogan. I wrote the petition for reconsideration in Hogan, Your Honor, and in that petition for reconsideration, motion for reconsideration, I begged the court, Arizona Supreme Court, please look at the permanent report, the final report of the Permanent Editorial Board of the Uniform Commercial Code. Did your prayer succeed? Absolutely not. It was turned down. Well, that's the point. Well, the point is, I think they were wrong. I think the Uniform Commercial Code, as the Federal Housing Finance Agency has said, of course the securitization matters. Of course the note matters. There's not even any question in this $200 billion lawsuit. Counsel, here's the problem. We are bound to apply the law as the Arizona courts have applied it. Not the editorial board for the – that you're – not the consent order, not the editorial board, not a bankruptcy panel, but what the – how the Arizona courts would interpret it. I think that's your biggest problem, is the Arizona courts have ruled against your position. Your Honor, I don't think I have any problem whatsoever. Because the courts have ignored Arizona law as set forth in the Uniform Commercial Code. This court, I think, would be an abomination. Hold on a second. You know, Birch is the Chief Justice, right? Yes. In the first paragraph, he says you're wrong. It's she. No, it's she. In the first paragraph, it says you're wrong. You don't like that, but that doesn't get us anywhere. No, it doesn't. It doesn't. She, Justice Birch, cannot eliminate the gigantic body of commercial law embodied in the Uniform Commercial Code. She has not cited a single section of the Commercial Code. Justice Birch did. This is an authoritative decision in the Arizona court. Well, that's – well, I'm asking – this is – You're asking us to overturn the Arizona court. Not at all. We're – I'm just asking. Ignore it then. Ignore it. This case has been removed from Arizona. I didn't get a chance to argue this case. There are all these cases – It doesn't make any difference. It makes a tremendous difference. In a removal case, we're bound to apply the law of the state. Well, the law of the state – This goes back to Erie v. Tompkins and a thousand cases in between. I don't believe she says categorically that the Uniform Commercial Code doesn't apply. I think she's using that only in the context of whether the note has to be shown. By the way, I'd like to reserve five minutes for rebuttal. You're getting close. Okay. So now the other problem, of course, is total lack of due process. We're not – there's a disparate treatment in the New York courts where 18 different banks and loan services have been sued, including Goldman Sachs, Bank of America Corporation, Citigroup. They've all been sued by the regulator. This is the regulator. The Federal Home Housing Finance Agency has now basically adopted all of the argument, virtually all of the arguments I've made, that the commercial – of course the commercial code applies. Of course you cannot do a Hail Mary pass over the depositor, over the sponsor, and over the underwriter. You can't simply suddenly throw that Hail Mary pass and ignore the whole securitization process. Most of the cases in Arizona have all held that securitization doesn't matter. How could that be any more false? They're saying that the chain of title doesn't matter to the deed of trust. They're saying that the chain of custody of a note doesn't matter. This is – this is crazy. Counsel, may I ask you, do you see a difference between judicial foreclosures and nonjudicial foreclosures? I am one of the – maybe one of a kind. I see virtually no difference, and that's the reason I cited a number of judicial. The same principle applies. In judicial or nonjudicial, you have to have a transfer of the note. You have to have an assignment. Excuse me. Most of the cases that you're referencing are judicial foreclosure cases, aren't they? Not at all. In fact, Massachusetts, in Ibanez's case, is both a judicial and a nonjudicial State. There are 36 States that are – Do you understand why we might not be interested in Massachusetts law? Your Honor, I'd say no. I'm afraid I'd say no, because I think you should – this Court should be interested in does the commercial code have anything to do with any of this – these nonjudicial cases. But the Arizona courts have told us for – in our scheme, in the State of Arizona, we – the uniform commercial code does not govern. Our statutes govern, and they may differ from the code. That doesn't matter to you? It doesn't. Your Honor, I can answer the question.   many, many, many times, where an effort to lift the stay is done, the bankruptcy judges in Arizona all unanimously agree with Beale, Inmate Beale, that, of course, the note matters. And, of course, the right – the person has to show the right to enforce the note. That's not proof of claim. That's a different context. Well, it's still – a proof of claim underlies an effort by somebody to foreclose, to take someone's house under the – under the power of sale, which involves the note, involves both the UCC and – and I'd like – I'd just like – I've got three minutes and 25 seconds. For a proof of claim, I'm sorry, you have to show – there has to be an ownership interest shown, which is a different issue than whether or not the – there's money owed in foreclosure. Okay. I don't disagree with that completely, because you have to show an ownership interest in the deed of trust. The deed of trust never got to the sponsor. What are you really worried about? It seems to me that you're worried about exactly what you say in the gray brief, and that is that you might have to pay – that your clients might have to pay twice on the same note. Hold on. My clients have never paid the true lender, ever. They've never paid anybody. No. They paid the loan servicer for years and years and years until the value of their home decreased 80 percent. In your gray brief, you say what really seems to me what's driving this is you're afraid that you may have to pay somebody twice, because you don't quite know who – no? No. I'm afraid that $19 trillion in these mortgage loans has been stolen by the loan servicers who have credit – they bought credit to false swaps. Answer my question. Thank you. You can save your time for rebuttal, counsel. You've got two minutes, Your Honor. Got it. Counsel? Good morning. May it please the Court. Emily Cates on behalf of Bank of America Loan Servicing and ReconTrust Company. An important and nearly dispositive case was decided after briefing in this matter closed. That's the Hogan case. You've been asking appellant's counsel about that matter. Hogan answered the question left open in Vasquez, that is whether or not the loan servicing beneficiary or a trustee must demonstrate the right to foreclose by showing possession of or otherwise documenting its right to enforce the underlying note. The answer under Arizona law is no. Hogan also answered whether the UCC applies to the non-judicial foreclosure process, and again, the answer to that question is no. That is, those are just decisions from Arizona's highest court. That is the applicable law in this case. This circuit has already recognized the effect of the Hogan decision. That is in the Bukna case, which we cited, appellant cited in their 28J letter. That case had very similar facts, very similar claims, indeed, even similar defendants, and it was in the Bukna case this circuit affirmed the district court's decision to dismiss without leave to amend. Hogan, Vasquez, Bukna dispose of most of plaintiff's claims. Their remaining theory about MERS has already been rejected by this circuit in its Cervantes opinion, holding that MERS is a valid system, particularly where the role is set out in the party's deed of trust, as here. As a nominee. That's correct. And you say that's the same as an agent? Yes. It's all over. Yes. And Cervantes is, has resolved that issue. This circuit has resolved that issue. On that panel. Judge Rollins is on that panel, as well as, I believe, on the Bukna matter. There is nothing unusual or different about the facts of this case or its procedural posture, or the district court's decision to dismiss it without leave to amend. It was rightly decided, and appellants contend to be affirmed. If there are no questions. I have one question. In the gray brief, although counsel doesn't agree with it now, they say what they're worried about is having to pay twice on the same obligation. And your answer to that is what? How are they protected against having to pay twice on the same note or obligation? The Hogan Supreme Court, the Supreme Court in the Hogan case answered a very similar inquiry, which was that Arizona's anti-deficiency statutes protect against that. If there's a foreclosure, there's not going to be a subsequent lender coming out of the woodwork trying to foreclose. The anti-deficiency statute should protect borrowers from that. Indeed, there are no facts in this case that would suggest that there are two competing lenders seeking monies to be paid from the borrowers in this matter. No such allegations were pled. So the amount that was sought was the amount that was owing on the outstanding note? The amount sought in the statement of breach? In the, yeah, in the foreclosure. Was there an amount listed that was deficient? I believe that the statement of breach identified some $500,000 principal interest being owed, and that was the amount owed under the loan. One single amount.  Thank you, counsel. Mr. Puddle. In my brief, I've said that the Court has to, the parties, including the sponsor, the depositor, and the underwriter, names have to be revealed. Those are necessary parties under Rule 19. And we, as the borrower's lawyers, are never given the names of absolute necessary parties. So we can't comply with our obligation under Rule 19 to join necessary parties. And those are parties who certainly have been joined in the $200 billion series of lawsuits filed by the financial administration. I think largely because of Elizabeth Warren has set that whole system up. And she is the most knowledgeable person in the country about the problems, major problems, with the securitization of loans in the past 15 years. Now, in Cervantes, it's purely dicta. Cervantes, no one addressed in the pleadings. I know the lawyers who were involved in that case. And I know the judges. Better person who knows the judge, right? A good lawyer is one that knows the judge. Okay. Anyway, in Cervantes, it was pure, that's pure dicta. The Court in Cervantes had no pleadings in front of them saying, Murders is wrong for the following reasons. So that's just dicta. This Court has never really. That's what I said. In Cervantes, I know. But I believe that was dicta, Your Honor, because it wasn't, well, there was no, there were no depositions taken. There was no discovery. I don't think discovery was permitted by court here. If a motion to dismiss is pending, there's no discovery permitted. I think that's improper. Now, the judge in. Now, let me just, in defense of the Cervantes panel, there were documents that were attached to the complaint. And those documents became part of the complaint. And those were the documents that were reviewed to determine what the terms of the note was. And that's perfectly valid. I understand that, Your Honor. But those documents, I hear. I know the lawyers who did it. And those documents did not include this issue of did the deed of trust, not the note, did the deed of trust ever get transferred from the original lender to, into the trust? And the answer, of course, is no. There's no, nothing in that record showed what happened when the deed of trust went to the depositor, the sponsor, and then to the depositor, and then to the underwriter, and how it got into the deed of trust. So these, it doesn't say one thing about whether these loans were collateralized or securitized. And only then. Two seconds. A few seconds. I think I've run out. I've got to. You're over your time. Could you wrap up, please? Yes. Well, again, the, as we can see from these series of $200 billion lawsuits that have been filed against numerous banks in the Southern District of New York, they're totally differently than the average Joe Bull borrower on the street who, unfortunately, gets represented by a public interest lawyer like myself. I'm not Johnny Cochran. You know, I don't have the staff or the money to do what Elizabeth Warren and the Federal Home Housing Finance Agency is doing on behalf of Freddie Mac and Fannie Mae, where Freddie Mac and Fannie Mae has been forced to pay, has unlawfully paid $200 billion worth of federal guaranteed mortgages. And I think the Court should, at a minimum, take a look at what the law is now in the Southern District of New York, where those cases are all going to trial. All of my cases are dismissed immediately. And attorney fee awards are granted against my clients. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court. That completes our session for this morning. We are on recess until 9 a.m. tomorrow morning.
judges: Cudahy, Trott, Rawlinson